Opinion issued January 26, 2006 




     









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00918-CV




SYLVIA GRAY, Appellant

V.

CHCA BAYSHORE L.P. d/b/a BAYSHORE MEDICAL CENTER and IRA
H. RAPP, M.D., Appellees




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2003-65141




O P I N I O N
          This appeal arises from a medical malpractice claim brought by appellant,
Sylvia Gray, against appellees, CHCA Bayshore L.P. d/b/a Bayshore Medical Center
(Bayshore) and Ira H. Rapp, M.D. The trial court dismissed Gray’s suit with
prejudice after concluding that the expert report she filed failed to satisfy the
requirements set forth in section 74.351 of the Texas Civil Practice and Remedies
Code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2005). In 
her sole issue on appeal, Gray argues that the trial court erred in finding that her
expert report did not comply with the statute. 
          We affirm. 
BACKGROUND
          In 2001, Gray was admitted to Bayshore for surgical treatment of chronic
sinusitis and nasal septal deformity. For the surgery, Gray was administered a general
anesthetic by Dr. Rapp. Upon regaining consciousness after the operation, Gray
became aware of severe pain in her left knee. Subsequent examination by an
orthopedist and a neurologist revealed a dislocation of the knee’s patella. Gray, age
39, had no prior history of knee injuries. 
          In November 2003, Gray brought suit against Bayshore, Dr. Rapp, and Phillip
A. Matorin, M.D., seeking to recover damages resulting from the injury to her knee.


 
Gray’s suit alleged that the injury was caused by the flexing of her left leg during 
surgery and that the injury could have been prevented had Dr. Rapp and the
Bayshore’s nursing staff properly monitored Gray’s extremities during the operation. 
In March 2004, Gray filed the report of her medical expert, Dr. Richard F. Toussaint,
M.D., as required by section 74.351 of the Texas Civil Practice and Remedies Code. 
See id. Both Bayshore and Dr. Rapp moved to dismiss Gray’s suit, arguing that Dr.
Toussaint’s expert report failed to comply with the requirements of section 74.351. 
See id. The trial court then granted Gray a 30-day extension to cure any deficiencies
in her expert report. See id. § 74.351(c). 
          Gray filed her amended expert report in June 2004. The report, again by Dr.
Toussaint, reads in pertinent part: 
Ms. Gray was administered a general anesthetic for the sinus surgery by
Ira H. Rapp, M.D. During the surgery, Ms. Gray’s knees and arms had
become flexed, and when she awoke from the anesthetic, she noted
severe pain upon attempting to move from a bedpan. She was noted to
have a negative history of knee injury. Ms. Gray was seen by John H.
Ownby, M.D., neurologist, and Ronald B. Heisey, M.D., orthopedist,
who upon subsequent workup of Ms. Gray’s knee pain determined that
her left patella had become dislocated. 
 
Based on the forgoing and my education, training, experience, and
reasonable medical probability, it is my opinion that Dr. Ira H. Rapp,
M.D., Dr. Phillip A. Matorin, M.D., and the nursing staff of Bayshore
Medical Center breached the standard of care for failing to properly
monitor, treat, and prevent the resultant left knee injury and dislocation
of the left patella. 
 
Based on the Texas definitions, Dr. Ira H. Rapp, M.D., Dr. Phillip A.
Matorin, M.D., and the Bayshore Medical Center perioperative nursing
staff were negligent by failing to properly monitor, treat, and prevent
Ms. Gray’s left patella dislocation. The negligence was in the
following:
 
1. Dr. Ira H. Rapp, M.D. failed to monitor the positioning of Ms. Gray’s
left knee to prevent the subsequent dislocation of the patella while under
a general anesthetic. The standard of care in this circumstance would be
for a physician to monitor the positioning of the patient’s extremities to
prevent injury during surgery and post operatively. 
 
2. The Bayshore Medical Center perioperative nursing staff failed to
monitor the positioning of Ms. Gray’s left knee to prevent the
subsequent dislocation of the patella while in the operating room. The
standard of care in this circumstance would be for the perioperative
nursing staff to monitor the positioning of the patient’s extremities to
prevent injury during surgery and post operatively. 
 
In the above instance, had Dr. Ira H. Rapp, M.D., Dr. Phillip A. Matorin,
M.D., and the Bayshore Medical Center perioperative nursing staff
monitored and detected the flexing of Ms. Gray’s arms and legs during
general anesthesia in a timely fashion, then in reasonable medical
probability, the pain and suffering experienced by Ms. Gray from the
dislocated left patella would not have occurred along with the resultant
necessary treatments. The failure to monitor, detect, diagnose, and
timely treat a malpositioned left knee during a general anesthetic was
negligence and proximately caused the dislocated left patella and
subsequent pain and suffering experienced by Ms. Gray on December
5, 2001. 
 
This opinion is based on the available medical records that you have
provided for my review. I understand that negligence is the failure to
use ordinary care, failure to do what a physician, or operating room
nurse, of ordinary prudence would have done under the same or similar
circumstances. I also understand that proximate cause is a cause which
in a natural and continuous sequence produces an event, and without
which, such an event would not have occurred. I also understand that
in order to be a proximate cause, an act or omission complained of must
be such that a person using ordinary care would have foreseen that the
event, or some similar event, might reasonably result therefrom. 
 
Based on these definitions, and on a reasonable degree of medical
probability, Dr. Ira H. Rapp, M.D., Dr. Phillip A. Matorin, M.D., and the
Bayshore Medical Center perioperative nursinng staff failed to meet the
standard of care when they neglected to monitor and detect a
malpositioned left knee resulting in a dislocated left patella on
December 5, 2001. The failure to monitor and detect the malpositioned
left knee resulted in a dislocated left patella, severe pain and suffering,
and subsequent medical treatment. 

          After receiving Gray’s amended expert report, Bayshore and Dr. Rapp again
moved to dismiss the suit, arguing that the report still did not comply with section
74.351. After a hearing, appellees’ supplemental motions to dismiss were granted,
and Gray timely appealed. DISCUSSION
          In her sole issue on appeal, Gray contends that the trial court erred in its
determination that Dr. Toussaint’s report did not comply with section 74.351 of the
Civil Practice and Remedies Code. Specifically, she argues that Dr. Toussaint’s
report constituted an objective good faith effort to comply with the requirements of
section 74.351, and thus contends that the trial court acted improperly in dismissing
her suit. See id. § 74.351(l) (stating that a court shall grant a challenge to an expert
report “only if it appears to the court, after hearing, that the report does not represent
an objective good faith effort” at compliance). 
          Standard of Review 
          We review all section 74.351 rulings under an abuse of discretion standard. 
Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to guiding rules or principles. See Garcia v. Martinez, 988 S.W.2d 219,
222 (Tex. 1999). When reviewing matters committed to the trial court’s discretion,
we may not substitute our own judgment for that of the trial court. Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992). A trial court does not abuse its discretion merely
because it decides a discretionary matter differently than an appellate court would in
a similar circumstance. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241–42 (Tex. 1985). 
          Section 74.351 of the Texas Civil Practice and Remedies Code
          Pursuant to section 74.351, medical malpractice plaintiffs must provide each
defendant physician and health care provider with an expert report or voluntarily
nonsuit the action. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351. If a claimant
timely furnishes an expert report, a defendant may file a motion challenging the
report’s adequacy. See id. at § 74.351(a). The trial court shall grant the motion only
if it appears, after hearing, that the report does not represent a good faith effort to
comply with the statutory definition of an expert report. See id. § 74.351(l). The
statute defines an expert report as a written report by an expert that provides, as to
each defendant, a fair summary of the expert’s opinions as of the date of the report
regarding: (1) applicable standards of care; (2) the manner in which the care provided
failed to meet the standards; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed. See id. § 74.351(r)(6); Palacios, 46 S.W.3d at
878–79. 
          Although the report need not marshal all the plaintiff’s proof, it must include 
the expert’s opinions on the three statutory elements–standard of care, breach, and
causation. See Palacios, 46 S.W.3d at 878–79. In detailing these elements, the report 
must provide enough information to fulfill two purposes if it is to constitute a good
faith effort. First, the report must inform the defendant of the specific conduct the
plaintiff has called into question. Id. at 879. Second, the report must provide a basis
for the trial court to conclude that the claims have merit. Id. A report that merely
states the expert’s conclusions as to the standard of care, breach, and causation does
not fulfill these two purposes. Id. The expert must explain the basis for his
statements and must link his conclusions to the facts. Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002). Furthermore, in assessing the report’s sufficiency, the
trial court may not draw any inferences, and must instead rely exclusively on the
information contained within the report’s four corners. See Palacios, 46 S.W.3d at
879. 
          Dr. Toussaint’s Report 
          Dr. Toussaint’s amended report essentially states that, as to both Bayshore and
Dr. Rapp: (1) the applicable standard of care required monitoring the positioning of
Gray’s extremities; (2) appellees failed to monitor the positioning of Gray’s left knee;
and (3) had appellees monitored the knee’s position, Gray, within reasonable medical
probability, would not have suffered a dislocated patella. Although the report, at first
glance, thus appears to articulate the three statutorily required elements of an expert
report, we are compelled, under an abuse of discretion standard, to conclude that the
trial court did not act unreasonably in granting appellees’ motions to dismiss. 
          The supreme court held in Palacios that medical malpractice plaintiffs must
provide an expert report detailing standard of care, breach, and causation as to each
defendant. Id. Here, the report states, without explanation, that a single standard of
care applied to both Bayshore and Dr. Rapp. While it is possible that an identical
standard of care regarding limb monitoring during and after surgery attaches to an
anesthesiologist (Dr. Rapp) and a perioperative nursing staff (Bayshore), such generic
statements, without more, can reasonably be deemed conclusory. Conclusory
statements regarding standard of care, breach, or causation, do not constitute a good
faith effort to comply with section 74.351 in that they fail to adequately inform each 
defendant of the specific conduct called into question by the plaintiff’s claims. See
id. 
          Similar weaknesses undermine Dr. Toussaint’s report in regard to how
appellees breached the applicable standard of care. Whether a defendant breached
the standard of care due a patient cannot be determined without “specific information
about what the defendant should have done differently.” See id. at 880. Here, Dr. 
Toussaint’s report contains only a general statement that appellees failed to monitor
Gray’s left knee properly. The report provides no specific information concerning
what actions appellees should have taken in the event they observed Gray’s knee
flexing. Indeed, a literal reading of the report’s most direct statements concerning
breach leads to the conclusion that simply monitoring Gray’s extremities, and taking
no corrective action, would have prevented her injury. In view of such general and
conclusory statements concerning breach, we cannot conclude that the trial court
abused its discretion in dismissing Gray’s suit.


 See id. at 879. 
          Conclusory statements also plague the report’s efforts to satisfy the statutory
element of causation. Specifically, Dr. Toussaint’s report does not state with any
specificity how appellees departure from the stated standard of care caused Gray’s
knee injury. Instead, the report provides only the conclusory statement that the failure
to monitor caused Gray’s injury. By not fleshing out how appellees’ failure to
monitor Gray’s extremities caused her injury, the report does not convincingly tie the
alleged departure from the standard of care to specific facts of the case. Such a
failure has been found to be a sufficient reason for concluding that an expert report
is statutorily inadequate. See Bowie Mem’l Hosp., 79 S.W.3d at 53. 
          We further note that the report appears to be inconsistent with respect to the
relationship among the standard of care, breach, and the cause of Gray’s injury. 
Specific language in the report indicates that the applicable standard of care breached
by the defendants was “monitor[ing] the positioning of the patient’s extremities.” 
The report then appears to depart from this limited standard of care and breach,
stating, “The failure to monitor, detect, diagnose, and timely treat a malpositioned left
knee during general anesthetic was negligence, and proximately caused the dislocated
left patella.” (Emphasis added.) The report thus fails to put the appellees on notice
as to who had what responsibility and how that person or persons departed from the
standard of ordinary medical care of a patient under anaesthesia in failing to do some
specific act required by a person in that position, causing damage that would not have
happened had ordinary professional care been used. Considering that the trial court
is limited to the four corners of the report in making its determination, one could
reasonably conclude that the conclusory language in the report, together with the
inconsistency as to appellant’s complaint, convinced the trial court that the report
failed to satisfactorily inform each appellee of the specific conduct being challenged. 
Palacios, 46 S.W.3d at 878–79. 
          In view of the conclusory, and at times inconsistent, statements within Dr.
Toussaint’s expert report, we cannot conclude that the trial court abused its discretion
in granting appellees’ motion for dismissal. We thus overrule Gray’s sole issue on
appeal. 
CONCLUSIONWe affirm the trial court’s order of dismissal. 
 
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.